IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

STATE OF MISSISSIPPI ex rel.;
STEELY DANIELLE WHITAKER,
Individually and as Wrongful Death
Beneficiary of William Danny Whitaker,
Deceased; DANIEL RYAN BONDS,
Individually and as Wrongful Death
Beneficiary of William Danny Whitaker,
Deceased; and ESTATE OF WILLIAM
DANNY WHITAKER                                                    PLAINTIFFS

v.                                          CIVIL ACTION NO. 1:15-cv-00077-GHD-DAS

GEORGE CHARLES RINEHART,
Individually and in his Official Capacity;
ALCORN COUNTY; and RLI INSURANCE
COMPANY                                                          DEFENDANTS

## MEMORANDUM OPINION GRANTING
## COUNTY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Presently before the Court is a Federal Rule of Civil Procedure 12(c) motion for

judgment on the pleadings [21] filed by Defendants George Charles Rinehart, individually and in

his official capacity ("Rinehart"), and Alcorn County, Mississippi ("Alcorn County")

(collectively, the "County Defendants"). Plaintiffs State of Mississippi *ex rel.*, Steely Danielle

Whitaker, Daniel Ryan Bonds, and the Estate of William Danny Whitaker (collectively,

"Plaintiffs") filed a joint response [38], and the County Defendants filed a reply [43]. In addition,

after seeking leave and being granted leave to do so, the County Defendants filed a supplemental

memorandum in support of their motion [52] based on the recent holding of the Fifth Circuit

Court of Appeals in *Legate v. Livingston*, 822 F.3d 207 (5th Cir. 2016), and Plaintiffs filed a

brief in response [53]. These matters are now ripe for review. Upon due consideration and for

the reasons stated below, the Court finds that the County Defendants' motion for judgment on the pleadings [21] should be granted in its entirety.

## I. *Factual and Procedural Background*

On April 24, 2015, Plaintiffs initiated this suit against Rinehart, the former sheriff of Alcorn County; Alcorn County; and RLI Insurance Company. In their complaint, Plaintiffs assert 42 U.S.C. § 1983 claims that Defendants "knowing[ly] or willful[ly] fail[ed], neglect[ed,] or refus[ed] to perform duties required by law" in violation of the Eighth Amendment right to be free from cruel and unusual punishment and Fourteenth Amendment right to substantive due process; Plaintiffs also assert state law claims for civil liability under Mississippi Code § 25-1-45 and wrongful death. Pls.' Compl. [1] at 1. Plaintiffs allege that this Court has federal question jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

Plaintiffs allege in pertinent part that the Decedent William Danny Whitaker (the "Decedent") was a "poly-substance abuser who struggled with addiction his entire adult life," *id.* ¶ 14; was "[a]t all times relevant to this civil action, . . . under sentence for violent felonies: robbery, burglary, and aggravated assault," *id.* ¶ 16; and was "classified by the Mississippi Department of Corrections ('MDOC') as 'medium custody,' " *id.* ¶ 17. Plaintiffs further allege that the Decedent was a lifelong resident of Alcorn County and personally knew Rinehart. *Id.* ¶ 14. Plaintiffs aver that Rinehart had knowledge of the Decedent's "criminal history as well as his past and continuing struggles with poly-substance abuse and the interplay between [the Decedent's] criminal history and his poly-substance abuse." *Id.* ¶ 15.

With the alleged relationship between the Decedent and Rinehart as backdrop, Plaintiffs assert the following allegations. Plaintiffs maintain that Rinehart "caused to be filed and did file

2

pro se a Petition for Writ of Habeas Corpus *Ad Testificandum* in the Circuit Court of Alcorn County in the case of *Mississippi v. William Danny Whitaker*, No. CR09-005." *Id.* ¶ 10. Plaintiffs aver that the purpose of the writ was for "[the Decedent] to aid in an investigation as a 'material witness,' " but that "[u]pon information and belief, no pending case existed in which [the Decedent's] testimony or deposition was necessary or required." *Id.* ¶¶ 12–13. Alcorn County Circuit Court Judge James S. Pounds entered an Order/Writ for MDOC to produce the body of the Decedent to the Alcorn County Jail and to ensure the Decedent remained in custody without any passes. *Id.* ¶¶ 18, 20. Plaintiffs allege that "[i]n direct contravention of the Order, Mississippi law, MDOC regulations, and the Inmate Housing Agreement, [Rinehart] personally authorized a weekend pass for [the Decedent] to stay with his mother," during which visit [the Decedent] purchased narcotics in Alcorn County," and "[t]hat same day, while at his mother's home, . . . died of a mixed drug overdose (cocaine, methamphetamine)." *Id.* ¶¶ 23–25. Plaintiffs maintain that the death of the Decedent was wrongful and "was directly and proximately caused by his release on an inmate pass" issued by Rinehart, who was "act[ing] under color of state law" and was "a final policy making official with respect to law enforcement decisions within Alcorn County and the administration of the [Alcorn County Jail]." *Id.* ¶¶ 26–28. Plaintiffs maintain that Rinehart "acted with deliberate indifference and reckless disregard to the Plaintiffs' federally protected rights and with gross negligence evidencing willful, wanton, or reckless disregard for the Plaintiffs' rights under Mississippi law." *Id.* ¶ 30. Plaintiffs also maintain that Rinehart's actions amounted to knowing and willful neglect to perform a duty required by law, "namely the duty not to release an inmate on a pass," that Rinehart "otherwise violated his official obligations," and that Plaintiffs bring a claim on Rinehart's public official bond for damages. *Id.* ¶ 47. Plaintiffs seek actual, compensatory, and punitive damages for Rinehart's alleged acts.

3

On August 21, 2015, Rinehart and Alcorn County jointly filed their answer and affirmative defenses [5]. Subsequently, RLI Insurance Company filed a motion to dismiss or, alternatively, to stay [12] which the Court denied in an Order [45] and memorandum opinion [46] dated February 23, 2016; the Court also stayed the case against RLI Insurance Company pending the liability determination as to Rinehart. Subsequently, the County Defendants filed the present Rule 12(c) motion for judgment on the pleadings [21].

## II.    *Federal Rule of Civil Procedure 12(c) Standard*

A Rule 12(c) motion is governed by the same standards as a Rule 12(b)(6) motion—that is, the Court must determine upon a review of the pleadings whether the plaintiff has stated a valid claim for relief. *See McDonnell v. Miller*, No. 15-60905, 2016 WL 3974111, at *2 (5th Cir. July 22, 2016) (citing *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010)).

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 509–10 (1990)). So, too, when deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *See Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)).

"[A plaintiff's] complaint . . . 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' " *Phillips v. City of Dallas, Tex.*, 781 F.3d

772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173

L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955,

167 L. Ed. 2d 929 (2007))). A claim is facially plausible when the pleaded factual content

"allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct.

1955). "[P]laintiffs must allege facts that support the elements of the cause of action in order to

make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53

(5th Cir. 2010) (internal quotation marks omitted). "[C]onclusory allegations or legal

conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."

*Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). "Dismissal is

appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is

plausible on its face' and has failed to 'raise a right to relief above the speculative level.' "

*Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (quoting

*Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

The Fifth Circuit has explained the *Iqbal/Twombly* standard as follows:

> In order for a claim to be plausible at the pleading stage, the
> complaint need not strike the reviewing court as probably
> meritorious, but it must raise "more than a sheer possibility that the
> defendant has violated the law as alleged." *See [Iqbal*, 556 U.S. at
> 678, 129 S. Ct. 1937.] . . . In determining whether a complaint
> states a claim that is plausible on its face, the court "draw[s] on its
> judicial experience and common sense." [*Id.* at 679, 129 S. Ct.
> 1937.]

*Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009)

(per curiam).

Dismissal is appropriate only "when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)). "The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). With the foregoing standard in mind, the Court turns to the motion before it.

### III.    *Analysis and Discussion*

The County Defendants argue in their motion for judgment on the pleadings first that Plaintiffs' allegations must be dismissed for failure to state a claim under the Eighth Amendment or Fourteenth Amendment to the United States Constitution, and that if the Court finds to the contrary, Rinehart should be dismissed as qualifiedly immune from suit. The County Defendants further argue that Plaintiffs' state law claims are statutorily exempt under the Mississippi Tort Claims Act (the "MTCA"). The Court examines each purported basis for dismissal in turn.

### A. Constitutional Claims

The County Defendants argue that Plaintiffs fail to state a constitutional claim under either the Eighth Amendment or Fourteenth Amendment to the United States Constitution. The County Defendants present the following four basic arguments in support of dismissal of Plaintiffs' constitutional claims: (1) the Decedent was not "in custody" at the time of the events giving rise to this suit because he was out on a weekend pass, and thus, there was no "failure to protect" or "special relationship" to trigger constitutional rights; (2) there was no "state-created danger," because the County Defendants did not create the Decedent's propensity to use drugs by granting him a weekend pass; (3) based on the recent Fifth Circuit case *Legate v. Livingston*, Plaintiffs cannot establish an Eighth Amendment violation where the Decedent willingly

6

participated in the conduct giving rise to his injury (by willingly ingesting the drugs that led to his fatal overdose); and (4) the County Defendants' release of the Decedent on a weekend pass did not violate his Fourteenth Amendment due process rights. Finally, the County Defendants argue that if the Court finds to the contrary, Rinehart is entitled to qualified immunity.

### 1. Eighth Amendment

The County Defendants argue that Plaintiff's allegations fail to state a claim under the Eighth Amendment, because although the Eighth Amendment imposed a duty on Alcorn County to assume some responsibility for the safety and well-being of inmates in its custody, the Decedent was not in the County Defendants' physical custody and was actually out of jail "when he made the decision to obtain and ingest cocaine and methamphetamine while out on a weekend pass." Cty. Defs.' Mem. Br. Supp. Mot. J. Pleadings [22] at 6; Cty. Defs.' Reply Supp. Mot. J. Pleadings [43] at 1. Therefore, the County Defendants maintain the Eighth Amendment does not apply and "there can be no deliberate indifference by the County Defendants to [the Decedent's] serious medical needs when he is out of jail and free to care for himself." Cty. Defs.' Reply Supp. Mot. J. Pleadings [43] at 1–2.

Plaintiffs argue that the County Defendants' arguments fail to "speak to [the Decedent's] inarguable status as a multiple convicted felon incarcerated at the [Alcorn County Jail] or support the dismissal of this claim," and further emphasize that the County Defendants were under specific order not to release the Decedent on a pass. Pls.' Resp. Opp'n to Cty. Defs.' Mot. J. Pleadings [39] at 7–9. Plaintiffs further maintain that although the Decedent was improperly released on a weekend pass, the Decedent remained at all times under the custody of the County Defendants.

The Decedent was transferred to the Alcorn County Jail for the purported purpose of being held pending his testimony in a case. Regardless of whether the weekend pass granted to the Decedent was authorized, his transfer to the Alcorn County Jail as alleged would not have affected the fact or length of the Decedent's sentence of incarceration. For the purposes of this analysis, the Court will assume that the Decedent remained in custody such that the Eighth Amendment is implicated.

"The Eighth Amendment requires that prison officials 'provide humane conditions of confinement'; specifically, 'prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.' " *Lott v. Edenfield*, 542 F. App'x 311, 315 (5th Cir. 2013) (per curiam) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quotation marks and internal quotation omitted)). "The [Eighth] Amendment encompasses a right to 'reasonable safety,' including protection against unsafe conditions that pose 'an unreasonable risk of serious damage to [the inmate's] future health.' " *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 35, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)).

"To state an Eighth Amendment claim based on prison conditions, a plaintiff must show a sufficiently serious deprivation, and must show that the relevant official or officials acted with deliberate indifference to inmate health or safety." *Id.* (citing *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (citations omitted)). " 'Deliberate indifference' means that the officials '(1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.' " *Id.* (quoting *Herman*, 238 F.3d at 664) (quotation omitted). "Moreover, the court must 'assess

whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose <u>anyone unwillingly</u> to such a risk.' " *Id.* (quoting *Helling*, 509 U.S. at 36, 113 S. Ct. 2475) (internal emphasis added).

Similarly, " '[t]o prevail on a [§] 1983 failure to protect claim, a prisoner must demonstrate that 'he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." ' " *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (quoting *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)). "The deliberate indifference standard in a failure to protect claim is subjective, not objective. It requires proof that the official actually knew of a substantial risk of serious harm and failed to act." *Id.* (citing *Farmer*, 511 U.S. at 832–34, 114 S. Ct. 1970).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Using the words "deliberate indifference" in an allegation obviously does express more than a legal conclusion; the Court "cannot accept its truth for purposes of evaluating the sufficiency of the pleadings." *See Doe v. Robertson*, 751 F.3d 383, 388 (5th Cir. 2014). Instead, the Court must look to Plaintiffs' <u>factual</u> allegations to determine whether they sufficiently allege deliberate indifference as articulated in the seminal *Farmer* case. *See Farmer*, 511 U.S. at 837, 114 S. Ct. 1970.

In the case *sub judice*, the pertinent alleged facts are that Rinehart was aware of the Decedent's "criminal history[,] as well as his past and continuing struggles with poly-substance abuse and the interplay between [the Decedent's] poly-substance abuse," Pls.' Compl. [1] ¶ 15, and that Judge Pounds' Order/Writ for the MDOC to produce the Decedent to the Alcorn County Jail "expressly required that [the Decedent] was 'to remain in custody **(without any passes)**,'" *id.* ¶ 20, 12. The allegations further establish that despite this knowledge, Rinehart granted the

9

Decedent a weekend pass to visit his mother, during which time the Decedent ingested drugs and died of an overdose. Plaintiffs allege that Rinehart "was subjectively aware of a substantial risk of serious harm to [the Decedent], as a lifetime poly-substance abuser, but through his actions and omissions manifested deliberate indifference towards him." *Id.* ¶ 34. Plaintiffs' allegation that Rinehart had actual, subjective knowledge of the Decedent's propensity as a life-long poly-substance drug abuser is supported by the additional factual allegation that the Decedent was a lifelong resident of Alcorn County, personally knew Rinehart, and that the Decedent was a poly-substance abuser who struggled with addition his entire adult life. *See id.* ¶ 14.

Plaintiffs' allegations, taken as true, do not establish that the County Defendants, including Rinehart, knew of and disregarded a substantial risk of serious harm to the Decedent. Even if a violation of state law occurred when Rinehart issued the unauthorized weekend pass to the Decedent, a violation of state law is not in and of itself sufficient to trigger Eighth Amendment liability. *See Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225, 235 (5th Cir. 2012) (citing *Jeneski v. City of Worcester, Mass.*, 476 F.3d 14, 17 (1st Cir. 2007)). Furthermore, "[a] violation of prison procedures does not in itself support a constitutional claim." *Simmons v. Collins*, 988 F.2d 1211, 1993 WL 82276, at *2 (5th Cir. 1993) (citing *Jackson v. Cain*, 864 F.2d 1235, 1251–1252 (5th Cir. 1989)). " 'Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm.' " *Pomier v. Leonard*, 532 F. App'x 553, 554 (5th Cir. 2013) (per curiam) (quoting *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001)); *see Hare v. City of Corinth, Miss.*, 74 F.3d 633, 649–50 (5th Cir. 1996) (quotation marks and citation omitted) ("We [have] the concern . . . that the *Farmer* standard not be transmuted into a negligence inquiry. Deliberate indifference, i.e., the subjective intent to cause harm, cannot be inferred from an [official's] failure to act

10

reasonably. If it could, the standard applied would be more akin to negligence than deliberate indifference."). Based on the foregoing, Plaintiffs' allegations fail to satisfy the deliberate indifference standard and thus fail to state a claim for more than negligence or gross negligence.

However, even assuming *arguendo* that Plaintiffs sufficiently allege deliberate indifference, the County Defendants argue in their supplemental brief that according to the Fifth Circuit's recent holding in *Legate v. Livingston*, 822 F.3d 207 (5th Cir. 2016), a prisoner cannot establish an Eighth Amendment violation where he willingly participates in the conduct giving rise to his injury. The County Defendants maintain that in this case, the Decedent willingly participated in the conduct giving rise to his death, the ingestion of drugs that led to his fatal overdose. Cty. Defs.' Suppl. Mem. Supp. Mot. J. Pleadings [52] at 1.

Plaintiffs argue in response that the factual and legal circumstances involved in the case *sub judice*, "a Sheriff violating state law and regulations to provide a weekend pass to an ineligible inmate who he subjectively knew was a lifelong poly-substance abuser, cannot be resolved by reference to the *Legate* decision," which Plaintiffs maintain is "[b]y its own terms, . . . limited to situations where an inmate's injuries arise from voluntary acts of a similar nature to the prison[-]approved communal pipe-smoking ceremony at issue in that case." Pls.' Resp. to Cty. Defs.' Suppl. Mem. Supp. Mot. J. Pleadings [53] at 2.

To the contrary, the Court finds *Legate* to be both binding and on point. In *Legate*, a Texas state prisoner filed a 42 U.S.C. § 1983 suit against the executive director of the Texas Department of Criminal Justice, alleging that the executive director violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from the risk of contracting Hepatitis C while Legate participated in a communal pipe-smoking ceremony at the Texas prison facility. 822 F.3d at 209. After the state prison began prohibiting

11

communal pipe smoking as a "poor health practice" presenting a significant risk of spreading communicable diseases among the prison population, Legate filed suit. *Id.* The district court dismissed his claim, reasoning that " 'because the [state prison facility] did not have a policy requiring [Legate] to participate in the communal pipe ceremony,' Legate was 'capable of exercising ordinary responsibility for his own welfare,' and voluntarily participated in the communal pipe-smoking ceremony." *Id.* at 210 (quoting *Legate v. Livingston*, No. 2:14–cv–269, 2015 WL 158868, at *1–*2 (S.D. Tex. Jan. 12, 2015) (citing *Helling*, 509 U.S. at 36, 113 S. Ct. 2475)). The Fifth Circuit acknowledged that it had never before "considered an Eighth Amendment claim involving voluntary conduct," but because "the persuasive authority is consistent with *Helling*, . . . we join these other circuits in holding that the Eighth Amendment does not address injury caused by an inmate's voluntary acts of this nature." *Id.* at 210–11.

As in *Legate*, Plaintiffs do not allege that the County Defendants required the Decedent to participate in the conduct giving rise to injury, that is, the ingestion of drugs while on the weekend pass, or that his situation "somehow incapacitated him from exercising 'ordinary responsibility for his own welfare.' " *See id.* at 211. Legate was found to have voluntarily participated in the pipe-smoking ceremony based on his personal religious tenets; in this case, the Decedent is alleged to have voluntarily participated in the ingestion of drugs based on his lifelong poly-substance abuse. As in *Legate*, the complaint in this case fails to state a claim for an Eighth Amendment violation, for these reasons and all of the reasons stated above.

Because the complaint alleges facts that, if true, would not establish liability for an Eighth Amendment violation, Plaintiffs fail to state an Eighth Amendment claim upon which relief may be granted.

## 2. **Fourteenth Amendment**

The County Defendants further argue that Plaintiffs fail to state a viable claim for a Fourteenth Amendment violation, because (1) the Decedent had no liberty interest in remaining in the Alcorn County Jail for his own protection from drug use instead of being released on a weekend pass; (2) there was no "special relationship" between the Decedent and the State entitling the Decedent to protection; and (3) the County Defendants did not create the danger that the Decedent would purchase and overdose on drugs while out on the weekend pass.

Plaintiffs allege that the Decedent had a Fourteenth Amendment right to protection "from a state[-]created danger based on his special relationship with the defendants as an inmate. This right required [Rinehart] to protect [the Decedent] from placement in a situation of serious danger while an inmate under his care and custody." Pls.' Compl. [1] ¶¶ 36–37. Plaintiffs further allege that "[Rinehart] failed to protect [the Decedent] from a known risk of serious harm by giving him an inmate pass [which] permitted [the Decedent] to procure the narcotics which caused his death." Id. ¶ 38. Plaintiffs aver that Rinehart "created a dangerous situation for [the Decedent] and was subjectively aware of a substantial risk of serious harm to [the Decedent] as a lifetime poly-substance abuser but through his actions and omissions manifested deliberate indifference towards him." Id. ¶ 39.

The County Defendants argue that Plaintiffs' allegations fail to state a due process claim under the Fourteenth Amendment, because "the Constitution does not impose upon the County Defendants a duty to hold a known drug user for the purpose of keeping him from using drugs." Cty. Defs.' Mem. Br. Supp. Mot. J. Pleadings [22] at 7. The County Defendants maintain that the Decedent "was not in the County Defendants' care and custody at the time of his death" but was "outside of the [Alcorn County Jail] on a weekend pass." Id. at 8.

"Ordinarily an inmate has no recognized due process interest in his custodial classification." *Bailey v. Fisher*, No. 13-60715, 2016 WL 2619408, at *2 (5th Cir. May 6, 2016) (per curiam) (citing *Moody v. Baker*, 857 F.2d 256, 257–58 (5th Cir. 1988)); *see Sandin v. Conner*, 515 U.S. 472, 484–86, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995) (an inmate has no liberty interest in a place of confinement or a particular custody level). Put another way, a prisoner "has no constitutional right to be incarcerated in the facility of his choice." *Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996). "A state-created liberty interest may arise . . . when a custodial classification results in conditions of confinement that 'impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Bailey*, 2016 WL 2619408, at *2 (quoting *Sandin*, 515 U.S. at 484, 115 S. Ct. 2293). However, the alleged facts of this case fail to demonstrate a change in custodial classification that "impose[d an] atypical and significant hardship on [the Decedent] in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484, 115 S. Ct. 2293. The Decedent in the case *sub judice* was an inmate of Parchman Penitentiary who was transferred to Alcorn County Jail and then released on a weekend pass; while out on the pass, he ingested drugs and fatally overdosed. In this Court's opinion, Plaintiffs' alleged facts do not state a claim for a due process violation on this theory.

In *Lovins v. Lee*, 53 F.3d 1208 (11th Cir. 1995), a man who had been convicted for the crimes of theft, robbery, kidnapping, and rape, violated his probation and was sentenced to serve a term at a county jail. *Id.* at 1209. During this time, despite his history of violent crimes, the man was made a jail "trusty" and was given several weekend passes. *Id.* While out on one of these weekend passes, the man kidnapped a young woman and brutally raped her. *Id.* The district court apparently found that the county officials had violated state law in granting the man

14

"trusty" status and weekend passes, but that this violation of state law did not rise to the level of a substantive due process violation against the young woman. *Id.* Although that case is otherwise factually dissimilar to the case *sub judice* and is persuasive but not binding authority, the purported state violation of unauthorized release on a weekend pass is similar to the purported state law violations in this case. The Court thus finds the reasoning in *Lovins* to be instructive. Even if in this case Plaintiffs allege state law violations, the allegations do not rise to the level of a due process violation.

"[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *City of Sacramento, Calif. v. Lewis*, 523 U.S. 833, 849, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998); *see Triplett v. LeBlanc*, 642 F. App'x 457, 460 (5th Cir. 2016) (per curiam) (citing *Coleman v. Sweetin*, 745 F.3d 756, 764–65 (5th Cir. 2014) ("a showing of mere negligence is not enough to state a constitutional claim")). Negligent failure to protect a prisoner from harm does not amount to a violation of the prisoner's constitutional rights under the Due Process Clause. *See Simmons v. Collins*, 988 F.2d 1211, 1993 WL 82276, at *2 (5th Cir. 1993) (citing *Davidson v. Cannon*, 474 U.S. 344, 347–48, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986)); *see Johnson v. Lucas*, 786 F.2d 1254, 1260 (5th Cir. 1986).

Based on all of the foregoing, the determination to move the Decedent to the Alcorn County Jail and then release him on an unauthorized weekend pass does not implicate a protected property or liberty interest, and as a result, the protections of the Due Process Clause do not attach to these proceedings on that theory.

Although substantive due process generally does not impose a duty on state actors to protect citizens from harm, *Dixon v. Alcorn Cty. Sch. Dist.*, 499 F. App'x 364, 366 (5th Cir. 2012) (per curiam) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–

15

96, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989)), some courts have allowed two possible exceptions to that general rule based on *DeShaney*: (1) when the state has a "special relationship" with the citizen, such as when the state takes the person into custody or otherwise limits the person's freedom to act on his or her own behalf; and (2) when the state has created the danger that led to the person's injury, *see DeShaney*, 489 U.S. at 198–201, 109 S. Ct. 998.

Suffice it to say that even if a special relationship existed between the Decedent and the County Defendants as a result of his incarceration by the State of Mississippi and transfer to the Alcorn County Jail, Plaintiffs have not sufficiently alleged deliberate indifference which is required to sustain a constitutional claim on the "special relationship" theory; thus, Plaintiffs have failed to state a claim for a Fourteenth Amendment violation under the "special relationship" theory. *See Broussard v. Basaldua*, 410 F. App'x 838, 839 (5th Cir. 2011) (per curiam) (citing *Walton v. Alexander*, 44 F.3d 1297, 1300–1301 (5th Cir. 1995) (en banc)).

The County Defendants further argue that Plaintiffs' allegations establish that the County Defendants "are not the ones 'who created the danger' that [the Decedent] would take drugs and overdose," but that it was instead the drug dealer who sold the Decedent the cocaine and methamphetamine and the Decedent himself who created the danger that led to the Decedent's overdose and death. Cty. Defs.' Mem. Br. Supp. R. 12(c) Mot. J. Pleadings [22] at 10. The County Defendants maintain that the Decedent "already was vulnerable to drug use when he entered the [Alcorn County Jail] and the County Defendants did nothing to create the risk that he would use and overdose on drugs by merely releasing him on a weekend pass." *Id.*

Plaintiffs argue in response that "the basis of the Plaintiffs' state[-]created danger claim is that [the Decedent] had a constitutional right to be protected from self-harm and danger by being kept in custody and not illegally released to where he could procure the means to harm himself.

16

It was the County Defendant[s'] affirmative act of illegally removing [the Decedent] from a place of safety to an environment where he would have unlimited access to narcotics despite the County Defendants' subjective awareness of his history of poly-substance abuse and its relationship to his criminal history," specifically, that "the violent criminal offenses for which [the Decedent] was incarcerated were prompted by his need to get money with which to buy drugs." Pls.' Resp. Opp'n to Cty. Defs.' Mot. J. Pleadings [39] at 12.

*DeShaney* carved out the state-created danger theory, which provides that "state actors may be held liable when 'the state actor played an affirmative role in creating or exacerbating a dangerous situation that led to the individual's injury.' " *Whitley v. Hanna*, 726 F.3d 631, 640 (5th Cir. 2013) (quoting *McClendon v. City of Columbia, Miss.*, 305 F.3d 314, 324 (5th Cir. 2002)). The Fifth Circuit "[has] never recognized the viability of the 'state-created danger' theory," *Van Deelen v. Cain*, 628 F. App'x 891, 897 (5th Cir. 2015) (per curiam) (citing *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 864 (5th Cir. 2012) (en banc)); *see Whitley*, 726 F.3d at 637 (Fifth Circuit has "declined to adopt a state-created danger theory to trigger affirmative duties under the Due Process Clause"). However, the Fifth Circuit has "identified elements that a plaintiff would need to allege if [the Fifth Circuit] ever recognized the state-created danger theory": (1) allegations "that the defendant used his or her authority to create a dangerous environment" and (2) allegations "that the defendant acted with deliberate indifference to the plight of the plaintiff." *Chavis v. Borden*, 621 F. App'x 283, 286 (5th Cir. 2015) (per curiam) (citing *Covington Cty.*, 675 F.3d at 865) (internal quotation marks and citation omitted)). "To establish deliberate indifference for purposes of state-created danger, the plaintiff must show that '[t]he environment created by the state actors must be dangerous; they must know it is dangerous; and . . . they must have used their authority to create an opportunity

17

that would not otherwise have existed for the third party's crime to occur.' " *Covington Cty.*, 675 F.3d at 865 (quoting *Piotrowski v. City of Houston, Tex.*, 237 F.3d 567, 585 (5th Cir. 2001) (citation and internal quotation marks omitted)).

As stated above, Plaintiffs fail to sufficiently allege deliberate indifference on the part of the County Defendants. Furthermore, Plaintiffs fail to allege that the Decedent suffered harm inflicted by a private actor, in this case, Rinehart. *See Guardiola v. Thaler*, 529 F. App'x 406, 409 (5th Cir. 2013) (per curiam). Thus, even if such a theory were viable in the Fifth Circuit, Plaintiffs have failed to allege a state-created danger theory that would entitle them to relief. For all of the foregoing reasons, Plaintiffs fail to allege a Fourteenth Amendment claim.

### 3. Conclusion of Constitutional Claims

Plaintiffs fail to state an underlying federal constitutional claim upon which relief can be granted. Therefore, the Court need not and does not reach the municipal liability claim or the qualified immunity issue. *See Covington Cty.*, 675 F.3d at 867 (underlying constitutional violation required for municipal liability claim); *Myers v. Klevenhagen*, 97 F.3d 91, 96 (5th Cir. 1996) (unnecessary for courts to reach qualified immunity issue if no alleged constitutional violation).

### B. State Law Claims

With the dismissal of the federal claims in this case, the Court retains supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. *See Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999) ("Once the court has proper removal jurisdiction over a federal claim, it may exercise supplemental jurisdiction over state law claims, *see* 28 U.S.C. § 1367, even if it dismisses or otherwise disposes of the federal claim or claims.").

Therefore, the Court turns to Plaintiffs' purported state law claims against the County Defendants and the County Defendants' arguments supporting dismissal of each.

Plaintiffs assert two state law claims in their complaint: (1) a claim for civil liability for failure to perform duty under Mississippi Code Annotated § 25-1-45 and (2) a wrongful death claim under the MTCA. Plaintiffs maintain that they have viable state law claims against Rinehart and RLI Insurance Company but concede their state law claims against Alcorn County.

### 1. Mississippi Code § 25-1-45 Civil Liability Claim

Plaintiffs allege in pertinent part that Rinehart, in his individual and official capacities, was "a county officer who . . . executed bond for the faithful performance of his duty" and subsequently "knowingly and willfully neglected to perform a duty required of him by law, namely the duty not to release an inmate, [the Decedent,] on a pass, and otherwise violated his official obligations." Pls.' Compl. [1] ¶¶ 41–42. Plaintiffs further allege that "[d]ue to . . . Rinehart's knowing and willful neglect to perform a duty required of him by law and based on the violation of his official duties," Plaintiffs brings this claim pursuant to Mississippi Code § 25-1-45 against Rinehart and RLI Insurance Company, the surety on Rinehart's public official bond. Id. ¶ 43. Plaintiffs argue that although the interplay between Mississippi Code § 25-1-45 and the MTCA is an issue of first impression in Mississippi, their claims "operate outside of the MTCA as an independent and distinct cause of action against . . . Rinehart on his public official bond." Pls.' Resp. Opp'n to Cty. Defs.' Mot. J. Pleadings [39] at 19. Plaintiffs cite Mississippi statutes that have been recognized as creating statutory actions apart from the MTCA against public officials and their bonds.

The County Defendants argue that Plaintiffs' allegations purporting to state a civil liability claim under Mississippi Code Annotated § 25-1-45 must be dismissed because "the MTCA provides the exclusive remedy against a governmental entity for acts or omissions that give rise to a civil action" and "Plaintiffs cannot bypass the MTCA by purporting to bring a claim" under Mississippi Code § 25-1-45. Cty. Defs.' Mem. Br. Supp. Mot. J. Pleadings [22] at 12 n.24. The County Defendants further argue that any state law claims brought by Plaintiffs against the County Defendants are barred under the inmate and/or police function exemptions of the MTCA.

The Court finds as follows. "Nearly all officials, local and state, take the same constitutional oath to faithfully perform the duties of their office . . . ." *Poole v. Brunt*, 338 So. 2d 991, 995 (Miss. 1976). As sheriff of Alcorn County, Rinehart was required by Mississippi Code § 19-25-1 to "take the oath prescribed by the Constitution, and give bond as prescribed by [§] 19-25-5." *See* Miss. Code Ann. § 19-25-1; *Poole*, 338 So. 2d at 994. "Mississippi Code . . . § 19-25-5 requires a sheriff to 'give bond, with sufficient surety, to be payable, conditioned and approved as provided by law and in the same manner as other county officials, in a penalty equal to One Hundred Thousand Dollars ($100,000.00), the premium for which shall be paid by the county.' " *Gilmer v. Trowbridge*, No. CIV.A.308CV136TSLJCS, 2009 WL 649692, at *1 (S.D. Miss. Mar. 10, 2009) (quoting Miss. Code Ann. § 19-25-5).

Mississippi Code § 25-1-15 provides the required conditions of the public official bond, specifically that "if [the public official] shall faithfully perform all the duties of said office during his continuance therein, then the above obligation to be void." Miss. Code Ann. § 25-1-15; *see Poole*, 338 So. 2d at 994. The bond issued by RLI Insurance Company to Rinehart tracks

the statutory conditions of public official bonds thusly: "[I]f [Rinehart] shall faithfully perform the duties of his said office, then this obligation shall be void and of no effect."

Mississippi Code § 25-1-45 allows interested persons to file suit where it can be shown that a bonded public official "knowingly or wil[l]fully fail[ed], neglect[ed], or refuse[d] to perform any duty required of him by law or . . . violate[d] his official obligations in any respect . . . ." *See* Miss. Code Ann. § 25-1-45; *Coon v. Ledbetter*, 780 F.2d 1158, 1162 (5th Cir. 1986) (citing *U.S. Fid. & Guar. Co. v. State ex rel. Stringfellow*, 182 So. 2d 919 (Miss. 1966); *State ex rel. Weems v. U.S. Fid. & Guar. Co.*, 128 So. 503 (Miss. 1930)). As the Court stated in its prior memorandum opinion denying RLI Insurance Company's motion to dismiss, the clear language of the statute contemplates a state law claim against the <u>surety</u> for wrongdoing on the part of a sheriff while executing his duties. *See* Ct.'s Mem. Op. [46] at 8. The question before the Court now is whether the statutory language also contemplates a state law claim against the <u>sheriff</u> for violating his performance bond—or if such claims must be brought through the vehicle of the MTCA. As Plaintiffs state, this issue appears to be a matter of first impression in Mississippi. Therefore, this Court must make an *Erie* guess as to how the Mississippi Supreme Court would rule.

Upon careful and detailed review of Mississippi law concerning public official bonds, this Court is of the opinion that the claim in the case *sub judice* is akin to suit on the bond as a contract by which Rinehart and the surety, RLI Insurance Company, agreed that Rinehart would faithfully perform the duties required by law and that he would not by virtue and under color of his office commit any illegal acts to the injury of Alcorn County or others. *See Wittmann v. Harrod*, 152 So. 2d 717, 720 (Miss. 1963); *Alexander v. Fid. & Cas. Co.*, 100 So. 2d 347, 349 (1958); *Lewis v. State*, 4 So. 429, 430 (Miss. 1888). Plaintiffs allege in pertinent part that

21

Rinehart breached a condition of his public official bond as sheriff of Alcorn County, in other words, that Rinehart failed to perform duties of his office as sheriff. The statute allows recovery on the bond when the sheriff "knowingly or wil[l]fully fail[ed], neglect[ed], or refuse[d] to perform any duty required of him by law or . . . violate[d] his official obligations in any respect . . . ." *See* Miss. Code Ann. § 25-1-45. In particular, it was within Rinehart's official duties as sheriff to faithfully obey the terms of the Order/Writ directing him to confine the Decedent **"until his testimony/deposition in an upcoming case"** and keep him "in custody (**without any passes**)." Order/Writ [1] at 12 (emphases in original). Plaintiffs' allegations are that Rinehart did not faithfully discharge these official duties. The gravamen for the cause of action is Rinehart's willful violations of law in seeking the temporary transfer of the Decedent for the false purpose of using him as a material witness in a case that never existed and subsequently releasing the Decedent on the weekend pass.

In *Shaw v. McCorkle*, 537 F.2d 1289 (5th Cir. 1976), the plaintiff alleged via 42 U.S.C. § 1983 that he suffered constitutional deprivations at the hands of four Mississippi highway patrolmen who had allegedly beaten him following a traffic stop, and that those constitutional deprivations "also constituted a breach of the performance bond indemnifying the faithful performance of the official duties of the defendant highway patrolmen." *Id.* at 1290–1291. Because Congress has not provided a statutory limitation period for actions brought under § 1983, the district court looked to the applicable Mississippi statute of limitations, considered the § 1983 claim as one based on an intentional tort, applied Mississippi's one-year statute of limitations for intentional torts, and found the action time barred. *Id.* On appeal, the plaintiff/appellant "contend[ed] that his particular action would not sound in intentional tort but would rather be an action against the patrolmen and their surety for breach of the performance

22

bond, a contract, and should be governed by Mississippi's catch-all limitation period (which includes actions on a written contract) of six years." *Id.* (citing Miss. Code Ann. § 15-1-49). The Fifth Circuit determined which state statute of limitations should apply by asking "how would a Mississippi court categorize this action or an action seeking similar relief, and which state statutory limitation period would apply to the action so categorized." *Id.* at 1293. The Fifth Circuit stated in a footnote:

> It will be observed that the causes of action set forth in the [Mississippi] statute (of limitations for intentional torts) result from breaches of duties which all persons owe to every other person, and <u>do not cover the breach of a duty specially imposed by law on one for the benefit of another.</u> . . . The declaration sets forth not a mere assault and battery, or maiming, but <u>a breach of the sheriff's official duty, the assault and battery, or maiming, being the particular breach thereof; and the cause of action is this breach of the deputy sheriff's official duties.</u>

*Id.* at 1293 n.7 (emphases added). The Fifth Circuit further reasoned:

> [T]he official bond of a public officer is a contract which the law requires him to execute, by which he and his sureties covenant and agree that he will faithfully discharge all of the duties of his office, which contract is breached by the failure of the officer to discharge any of his official duties.

*Id.* at 1293 n.8. The Fifth Circuit found that the action was against a public officer and the surety on his bond—notwithstanding that the alleged breach constituted a tort—and that "[i]n Mississippi such an action is in contract and is governed by the six-year statutory limitation period for written contracts." *Id.* at 1294 (citing Miss. Code Ann. § 15-1-49; *Alexander v. Carsley*, 25 So. 2d 709 (Miss. 1946); *State v. Smith*, 125 So. 825 (Miss. 1930)). Indeed, the Mississippi Supreme Court cases cited by the Fifth Circuit in support of its ruling in *Shaw* make clear that a viable claim may be brought against a sheriff and surety for breach of the sheriff's performance bond—even if the alleged breach constitutes a tort.

One of the Mississippi Supreme Court cases the Fifth Circuit relied upon in *Shaw* was *State v. Smith*. In that case, the "plaintiff sought damages against a deputy sheriff and his surety in a suit on the deputy's official bond for injuries sustained from being shot by the deputy during an arrest." *See Shaw*, 537 F.2d at 1293; *Smith*, 125 So. at 825–26. In reversing the trial court, which had determined the case was one for intentional tort, the Mississippi Supreme Court reasoned that "when committed by a public official, such an act is not the breach of a duty which every person owes to every other person and thus is not an intentional tort" but is "rather . . . [an] action for breach of the deputy sheriff's official duties." *See Shaw*, 537 F.2d at 1293; *Smith*, 125 So. at 926. The Mississippi Supreme Court further reasoned that "since the bond represents a contract between the officer, his surety, and the obligees by which the officer agrees faithfully to discharge the duties of his office, an action for damages on the bond is a contract action . . . ." *See Shaw*, 537 F.2d at 1293; *Smith*, 125 So. at 926.

In the other Mississippi Supreme Court case the Fifth Circuit relied upon in *Shaw*, *Alexander v. Carsley*, the plaintiff brought a state law claim in state court against a highway patrolman and the surety for an alleged breach of his performance bond when the highway patrolman allegedly inflicted injuries upon the plaintiff. *See Shaw*, 537 F.2d at 1293; *Alexander*, 25 So. 2d at 709. The Mississippi Supreme Court held that the case was a contract suit on the officer's bond, not an intentional tort case for assault and battery. *See Shaw*, 537 F.2d at 1293; *Alexander*, 25 So. 2d at 709.

The reasoning *supra* supports that the claim in the case *sub judice* for breach of Rinehart's public official bond is actually one sounding in contract, not tort, law. The MTCA provides in pertinent part:

The Legislature of the State of Mississippi finds and determines as a matter of public policy and does hereby declare, provide, enact and reenact that the "state" and its "political subdivisions," as such terms are defined in Section 11-46-1, are not now, have never been and shall not be liable, and are, always have been and shall continue to be immune from suit at law or in equity on account of any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract, including but not limited to libel, slander or defamation, by the state or its political subdivisions, or any such act, omission or breach by any employee of the state or its political subdivisions, notwithstanding that any such act, omission or breach constitutes or may be considered as the exercise or failure to exercise any duty, obligation or function of a governmental, proprietary, discretionary or ministerial nature and notwithstanding that such act, omission or breach may or may not arise out of any activity, transaction or service for which any fee, charge, cost or other consideration was received or expected to be received in exchange therefor.

Miss. Code Ann. § 11-46-3(1) (emphases added). Express breach of contract claims fall outside the purview of the MTCA. *See Bellsouth Telecommunications, LLC v. Eutaw Constr. Co.*, No. 3:15CV176-MTP, 2016 WL 3212182, at *3 (S.D. Miss. June 8, 2016). However, claims for tortious breach of contract and for breach of an implied contract are covered by the MTCA. *See Whiting v. Univ. of S. Miss.*, 62 So. 3d 907, 916 (Miss. 2011) (citing *City of Jackson v. Estate of Stewart ex rel. Womack*, 908 So. 2d 703, 710 (Miss. 2005)).

It is clear to this Court that the claim in the case *sub judice* is not for breach of an implied contract. The contract at issue is the public official bond, an express contract, and the contractual terms alleged to have been breached are express terms. Therefore, the claim includes a breach of contract claim. However, the claim also encompasses a tort, and thus constitutes a tortious breach of contract claim. *See Carl E. Woodward, L.L.C. v. Acceptance Indem. Ins. Co.*, 743 F.3d 91, 96 (5th Cir.), *reh'g denied*, 749 F.3d 395 (5th Cir. 2014) (quoting *Eselin–Bullock & Assoc. Ins. Agency, Inc. v. Nat'l Gen. Ins. Co.*, 604 So. 2d 236, 240 (Miss. 1992) (To establish a

25

tortious breach of contract claim, the plaintiff must establish breach of contract, as well as an "intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort."); *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 66 (Miss. 2004).

In this case, Plaintiffs claim that Rinehart breached the contract (his public official bond) and his official duties as sheriff when he committed the alleged wrongdoing. To link Rinehart's alleged breach of contract to the Decedent, Plaintiffs allege that Rinehart "knowingly and willfully neglected to perform a duty required of him by law, namely the duty not to release an inmate, [the Decedent[,] on a pass, and otherwise violated his official obligations." *See* Pls.' Compl. [1] ¶ 42. Plaintiffs further allege that the Decedent's death from a drug overdose "was directly and proximately caused by his release on an inmate pass." *Id.* ¶ 26. Clearly, the link from the alleged breach of contract to the Decedent is the commission of a tort against the Decedent, whether negligence, gross negligence, or otherwise. Therefore, this claim is one for tortious breach of contract, not merely breach of contract, and falls within the purview of the MTCA.

"Under Mississippi Code [§] 11-46-7, the MTCA provides the exclusive civil remedy for tort actions against the state, its political subdivisions, and its employees." *Lee v. Jackson County*, No. 1:13CV441-HSO-RHW, 2014 WL 11514946, at *4 (S.D. Miss. Aug. 8, 2014) (quoting *City of Jackson v. Harris*, 44 So. 3d 927, 932 (Miss. 2010) (citing Miss. Code §§ 11-46-7(1))). Plaintiffs have not met the pre-suit notice requirements to bring an MTCA claim against the County Defendants. *See* Miss. Code Ann. § 11-46-11(1).[1] However, even if the pre-suit

---

[1] The MTCA provides in pertinent part as follows:

> After all procedures within a governmental entity have been exhausted, any person having a claim under this chapter shall proceed as he might in any action at law or in equity, except that at least ninety (90) days before instituting suit,

notice requirements were met, on the alleged facts of this case, the Decedent was "at the time the claim ar[ose] an inmate of [Alcorn County J]ail," *see* Miss. Code § 11-46-9(1)(m), and thus, the inmate exception to the MTCA would insulate the County Defendants from liability on this state law claim.

The Court notes that to the extent Plaintiffs attempt to bring a state law claim against Rinehart in his individual capacity the same would fall under the purview of the MTCA and is barred for the same reasons stated above. The MTCA provides that no employee of a governmental entity "shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. § 11–46–7(2); *see Stewart ex rel. Womack v. City of Jackson*, 804 So. 2d 1041, 1052 (Miss. 2002); *McGehee v. DePoyster*, 708 So. 2d 77, 80 (Miss. 1998); *Suddith v. Univ. of S. Miss.*, 977 So. 2d 1158, 1177 (Miss. Ct. App. 2007). The MTCA also provides that "[f]or the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation[,] or any criminal offense." Miss. Code Ann. § 11-46-7(2).

Plaintiffs allege that Rinehart was acting within the course and scope of his employment as Alcorn County sheriff when he committed the wrongful acts of requesting the improper transfer of the Decedent to the Alcorn County Jail and releasing him on an improper weekend pass in violation of the state court judge's Order/Writ, and in so doing violated his official duties.

---

the person must file a notice of claim with the chief executive officer of the governmental entity.

Miss. Code Ann. § 11-46-11(1).

27

*See* Pls.' Compl. [1] ¶¶ 27–29, 43. The allegations characterize Rinehart's actions as "knowingly and willfully neglecting to perform a duty required of him by law, namely the duty not to release an inmate, [the Decedent] on a pass, and otherwise violat[ing] his official obligations." *Id.* ¶¶ 42–43. On these alleged facts, Rinehart acted in flagrant disregard of the law of Mississippi, but while acting in his official capacity as sheriff. Rinehart is immune from suit in his individual capacity, and the claim is further barred by the inmate exception. Therefore, Plaintiffs are prohibited from bringing this state law claim against Rinehart individually.

### 2. **Wrongful Death Claim**

Finally, Plaintiffs assert a wrongful death claim against Rinehart and the County Defendants, but acknowledge correctly that "provisions of Miss[issippi] Code Ann[otated] § 11-46-9(m) and *Lee v. Thompson*, 859 So. 2d 951 (Miss. 2003) . . . operate to bar this claim." Pls.' Compl. [1] ¶ 47. The County Defendants argue the wrongful death claim must be dismissed. Plaintiffs make no argument in support of this claim in their response to the Rule 12(c) motion. The Court finds that this claim must be dismissed.

### *IV.    Conclusion*

In sum, the motion for judgment on the pleadings [21] filed by Defendants George Charles Rinehart, individually and in his official capacity, and Alcorn County is GRANTED in its entirety; all CLAIMS are DISMISSED; all PARTIES are DISMISSED; and this case is CLOSED.

An order in accordance with this opinion shall issue this day.

28

THIS, the 7th day of September, 2016.

_____
SENIOR U.S. DISTRICT JUDGE